# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN BAMAT, | No. 4:18-CV-01898 |
| Plaintiff, | (Judge Brann) |
| v. | |
| GLENN O. HAWBAKER, INC, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 23, 2019

Plaintiff Jonathan Bamat brings wrongful discharge and disability discrimination claims against his former employer, Glenn O. Hawbaker, Inc. Hawbaker moved for summary judgment.

**I.    BACKGROUND**

Jonathan Bamat was hired by Glenn O. Hawbaker as a survey assistant in the summer of 2018.[1] Bamat has bipolar disorder.[2] He takes medication for this condition and previously received treatment at a voluntary in-patient center.[3] Upon his hiring, Bamat indicated on a voluntary self-identification of disability form that

---

[1] Statement of Material Facts (SOMF) ¶ 3, ECF No 44.

[2] Plaintiff's Counterstatement of Material Facts (PCMF) ¶ 65, ECF No 47.

[3] PCMF ¶ 66.

he had bipolar disorder and schizophrenia, though he has been diagnosed with only the former.[4]

Bamat was working on-site on August 8, 2018, when he reported to his supervisor that his head hurt.[5] His supervisor observed bruising behind Bamat's right ear, which Bamat believed was the result of an insect bite.[6] In this initial conversation with his supervisor, Bamat discussed his intention to seek worker's compensation benefits.[7] On his supervisor's suggestion, Bamat spoke with the triage nurse and went home, and then missed work the next day, reporting to his supervisor that he felt dizzy and unwell.[8] On August 10, 2018, Bamat felt better and returned to work.[9]

Bamat's supervisor in turn told his boss, Harry Mills, about Bamat's injury on August 8.[10] On August 9, 2018, Mills called Kristi Liptak, Hawbaker's EEO officer, to discuss Bamat.[11] Liptak took notes on this conversation that indicated that Mills believed Bamat was "scheming for compensation."[12] Her notes also say the word

---

[4] *Id* at ¶ 66.
[5] SOMF ¶ 12.
[6] *Id* at ¶ 13–14.
[7] Bamat Dep 104:25–109:1, ECF No 47-13.
[8] SOMF ¶ 15–23.
[9] *Id* at ¶ 28.
[10] *Id* at ¶ 16.
[11] *Id* at ¶ 26.
[12] Plaintiff's Exhibit 1, ECF No 47-1.

"schizophrenic" and, under that, "wants to get rid of him before something happens."[13]

On August 13, 2018, Bamat urinated along the side of a haul road at a work site, standing between opened front and rear passenger doors of a truck to maintain some modicum of privacy.[14] In spite of this, he was seen by at least two coworkers.[15]

His supervisor immediately issued a verbal warning, and the project superintendent instructed the supervisor to issue Bamat a written warning.[16] While at the job site office, the supervisor spoke to John Wert, the project manager, over the phone about the incident.[17] Wert informed the supervisor that he would personally address the issue himself.[18] Wert spoke with Liptak, Mills, and Michele Foust from Human Resources, and then he fired Bamat.[19]

Bamat filed a complaint in the Court of Common Pleas of Centre County, Pennsylvania, on September 4, 2018. Hawbaker filed a notice of removal to this Court on September 27, 2018. Bamat filed the operative amended complaint on July 29, 2019. On September 3, 2019, Hawbaker moved for summary judgment.

---

[13] *Id.*
[14] SOMF ¶ 31.
[15] *Id* at ¶ 32–35.
[16] *Id* at ¶ 39–40.
[17] *Id* at ¶ 42.
[18] SOMF ¶ 42.
[19] *Id* at ¶ 44–64.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[21] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[22]

### B. Bamat's Claims

Bamat claims relief on two grounds. First, he claims that he was wrongfully discharged for saying that he planned to seek worker's compensation. Second, he claims that Hawbaker discriminated against him on the basis of a disability. Both wrongful discharge and disability discrimination claims apply the *McDonnell Douglas* burden-shifting framework.[23] In the test's three steps, the plaintiff must first establish a *prima facie* case; second, the defendant must identify a legitimate, nondiscriminatory reason for the adverse employment action; and third, the plaintiff

---

[20] FRCP 56(a).

[21] *Clark v Modern Group Ltd*, 9 F3d 321, 326 (3d Cir 1993), citing *Anderson v Liberty Lobby, Inc*, 477 US 242, 255 (1986), and *Celotex Corp v Catrett*, 477 US 317, 322 (1986).

[22] *Clark*, 9 F3d at 326.

[23] *See Theriault v Dollar General*, 336 Fed Appx 172, 175 (3d Cir 2009); *Proudfoot v Arnold Logistics, LLC*, 59 F Supp 3d 697, 703 (MD Pa 2014).

must show that a rational factfinder could conclude that the defendant's stated reason was a pretext for discrimination.[24]

The *prima facie* case for wrongful discharge has three elements: (1) the plaintiff engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there must be a causal nexus between his protected activity and the adverse employment action.[25] The *prima facie* case for disability discrimination also has three elements: (1) the plaintiff is a disabled person within the meaning of the ADAAA, (2) he is qualified to perform the essential functions of the job, and (3) he suffered an adverse employment decision as a result of discrimination.[26]

Hawbaker contends that Bamat cannot identify evidence in the record supporting the causal elements of either *prima facie* case or that their stated nondiscriminatory reason for firing him (urinating at a worksite) was a pretext for discrimination. I respectfully disagree for the reasons that follow.

### C.     Analysis

On August 9, 2018, Bamat's supervisor Harry Mills spoke on the phone with Kristi Liptak in Human Resources. Liptak's notes on this conversation are in the

---

[24] *See Proudfoot*, 59 F Supp 3d at 703–04.

[25] *Theriault*, 336 Fed Appx at 174.

[26] *Taylor v Phoenixville School District*, 184 F3d 296, 306 (3d Cir 1999).

record.²⁷ According to the notes, Mills believed Bamat was "scheming for compensation."²⁸ Another heading says "schizophrenic."²⁹ Under that heading, it says "wants to get rid of him before something happens."³⁰ Four days later, without any prior warnings or reprimands, Bamat became the only Hawbaker employee in at least five years to be fired or disciplined in any way for urinating at a worksite.³¹ Then, when Mills and Liptak were separately deposed about their August 9 conversation, they gave contradictory accounts of it.³²

This is certainly enough to satisfy a *prima facie* causation burden on summary judgment. The notes support a direct connection between Bamat's firing and both his disability³³ and his expressed desire to seek worker's compensation.

---

²⁷ ECF No 47-1.

²⁸ *Id*.

²⁹ *Id*.

³⁰ *Id*.

³¹ Answers to Plaintiff's First Set of Interrogatories to Defendant, ECF No 47-9. However, another employee was reprimanded but not fired two months after Bamat's termination. Plaintiff's Exhibit 7, ECF No 47-7; Plaintiff's Exhibit 8, ECF No 47-8.

³² *Compare* Mills Dep 36:3–37:5, ECF No 47-17 (denying that Mills told Liptak that Bamat was schizophrenic or that Mills even knew about Bamat's condition at that time) *with* Liptak Dep 61:15–63:21, ECF No 47-16 (recounting that Mills told Liptak that Bamat was schizophrenic and wanted to get rid of him before something happened).

³³ Although Bamat has bipolar disorder, not schizophrenia, Liptak's notes suggest he was "regarded as" having schizophrenia. *See* 42 USC § 12102(3); *Shaffer v Greater Hazleton Health Alliance*, 2013 WL 2443931, at *3–4 (MD Pa June 5, 2013). Hawbaker does not argue that Bamat is not "disabled."

Additionally, the close temporal proximity of only four days is unusually suggestive of an unlawful motive.[34]

This evidence is also enough to permit an inference that Hawbaker's stated reason was pretextual. The contradictory deposition testimonies of Mills and Liptak, combined with the notes and timing evidence, undermine Hawbaker's credibility.[35] Further, there is evidence in the record that workers routinely urinated at Hawbaker worksites outside of a portable toilet, to the point that supervisors would instruct workers to do so and that workers would bring baby wipes to prepare for that situation.[36] Susan Carlini, a Hawbaker employee of twenty-four years, testified that the proposition that "employees do not regularly urinate outside portable toilets at [Hawbaker] work sites" is "totally false."[37] Viewing this evidence in a light favorable to Bamat, Hawbaker's decision to crack down on him for such a common, and perhaps *encouraged* behavior, is suspect.

Hawbaker resists this conclusion by arguing that John Wert alone made the decision to fire Bamat without any input from Mills or Liptak. But this is disputed.

---

[34] *See Murphy v McLane Eastern, Inc*, 2017 WL 770653, at *4 (MD Pa Feb 28, 2017) (explaining that "[r]egarding temporal proximity, the Third Circuit has held that an adverse employment action occurring within ten (10) days from the date of the protected action is unduly suggestive").

[35] *See Chase v Frontier Communications Corp*, 361 F Supp 3d 423, 435 (MD Pa 2019), quoting *Fuentes v Perskie*, 32 F3d 759, 764 (3d Cir 1994).

[36] Carlini Dep 35:21–36:9, ECF No 47-14. *See also id* at 22:9–25, 24:16–25, 30:16–24, 35:21–39:8 (discussing the frequency of this practice); McMurtrie Dep 12:4–10, ECF No 47-15 (same); Bamat Dep 152:7–22, ECF No 47-13 (same).

[37] Carlini Dep 38:20–24.

Despite their contention that Wert was the sole decision-maker, Hawbaker's own description of the firing process admits that Wert spoke with three people before deciding to terminate Bamat—including both Mills and Liptak.[38] At his deposition, Wert testified that he had not made up his mind on what to do about Bamat when he called Human Resources, and that on that call he asked Foust "How I should proceed or what should I do?" and that they "had a conversation back and forth."[39] Particularly considering Hawbaker's credibility issues discussed above, these circumstances do not foreclose a jury from inferring that an improper motive drove Hawbaker's decision.

## III. CONCLUSION

Defendant's Motion for Summary Judgment (ECF No 43) is **DENIED**. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[38] SOMF ¶ 44, 50.

[39] Wert Dep 62:13–21, ECF No 44-1.